IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Daniel Robert Bell,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:23cv155 (LMB/LRV)** |
| | ) | |
| **Deputy Amoah,** | ) | |
|     **Defendant.** | ) | |

MEMORANDUM OPINION

This matter is before the Court upon a Motion for Summary Judgment ("Motion") [Dkt. No. 29] filed by Deputy Charles Amoah[1] ("defendant" or "Deputy Amoah") in this civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner Daniel Robert Bell ("plaintiff"). Plaintiff claims in his Complaint that Deputy Amoah used excessive force on him and called him a homophobic slur. [Dkt. No. 1] at 4. Plaintiff seeks $7,500 in monetary damages and for "charges [to be] filed against" defendant. Id. at 5. In response to plaintiff's allegations, on December 1, 2023, defendant filed the Motion, which is supported by video evidence, audio recordings, affidavits, and documentary exhibits. See [Dkt. Nos. 29-30]. With the Motion, Deputy Amoah filed a clear Roseboro[2] notice advising plaintiff of his right to respond and advising plaintiff that a failure to respond could result in dismissal of the Complaint. [Dkt. No. 26]. Despite receiving this clear guidance, as of January 22, 2024, plaintiff has neither filed a timely response to defendant's Motion nor requested additional time in which to do so. As a

---

[1] Plaintiff misspelled the defendant's surname, listing "Amoha" in the caption of this action. See [Dkt. No. 1] at 1. Throughout this opinion, the Court will use the proper spelling of defendant's name as written in his Motion for Summary Judgment, and the Clerk will be directed to correct the caption.

[2] See Roseboro v. Garrison, 258 F.2d 309 (4th Cir. 1975).

result, defendant's unopposed Motion is ready for consideration. For the reasons that follow, the Motion will be granted, and judgment will be entered in favor of the defendant.

## I. Background

Plaintiff filed this action in February 2023, alleging that, on August 26, 2022, defendant "physically assaulted" him and called him "a faggot." [Dkt. No. 1] at 4. Plaintiff claims to be "a bisexual male" and "feel[s] as [if his] 14th Amendment constitutional right[s] [were] violated" by defendant's actions. Id. By not opposing defendant's Motion, plaintiff concedes that the following facts are undisputed.

At all times relevant to this action, plaintiff was a pretrial detainee at the Henrico County Jail ("HCJ"), where he was held while awaiting a hearing for an alleged probation violation. [Dkt. No. 30-2] at 11. Defendant was—and remains—a deputy sheriff employed by the Henrico County Sheriff's Department and was working at HCJ on August 26, 2022. [Dkt. No. 30-1] at 1 at ¶¶ 3-4. That day, defendant was assigned to assist with "pill pass," the informal name for the time of day medications are distributed to inmates. Id. at ¶ 4. At HCJ, inmates are required to wear their full jail uniform during pill pass. Id. Consequently, when plaintiff proceeded to enter the sallyport without wearing his full uniform, defendant did not allow him to pass. Id. at 1-2, ¶ 5. In response, plaintiff cursed at defendant, stating, "Fuck you, why do I have to put on my uniform?" Id. He also said, "Fuck you, pussy" before putting on his uniform. Id.

When plaintiff returned to the sallyport door dressed in his uniform, another inmate was already inside waiting to receive his medication. Id. at 2, ¶ 7. At HCJ, only one inmate is allowed in the sallyport at a time. Id. at ¶ 6. Inmates are instructed not to crowd the sallyport entrance because it creates a security concern for the officers and nurses behind the door and makes it difficult for inmates who have received their medications to leave. Id. Consequently,

2

when plaintiff approached the sallyport door, Deputy Amoah ordered him to take a step back. Id. at ¶ 8. When plaintiff ignored the order and attempted to enter the sallyport, Deputy Amoah pushed him backward out of the sallyport, after which plaintiff cursed at defendant once more. Id.

Eventually, defendant invited plaintiff into the sallyport to discuss what had occurred. Id. at ¶ 9. There, plaintiff stated, "Fuck you, pussy. What do you want to do?" while raising his fists at Deputy Amoah. Id. In response, defendant directed plaintiff back into the dayroom; however, plaintiff continued to crowd the sallyport entrance and again raised his fists at defendant. Id. at 3, ¶ 10.

Sometime later, Deputy Amoah again invited plaintiff into the sallyport and instructed him to close the door behind him when he entered. Id. at ¶ 11. Once inside, plaintiff continued to curse at defendant and raised his fists. Id. at ¶ 12. Deputy Amoah verbally attempted to calm plaintiff, but after that was unsuccessful, he attempted to place plaintiff's arms behind his back. Id. Plaintiff resisted defendant's efforts, which led another officer to enter the sallyport to assist defendant. Id. Eventually, defendant and his colleague were able to secure plaintiff against the sallyport wall, at which point plaintiff stopped resisting and apologized for his conduct. Id. at ¶ 14. Plaintiff was then allowed to receive his medication and return to the dayroom. Id. at ¶¶ 14-15.

Deputy Amoah flatly denies calling plaintiff a "faggot" and asserts that he was unaware of plaintiff's sexual orientation at the time of the events in question. Id. at ¶ 16.[3]

---

[3] Defendant has submitted video footage which captures much of what has just been described outside of the sallyport. See [Dkt. No. 30-2] at 12. The video footage does not, however, depict what occurred inside of the sallyport.

3

On September 6, 2022, at approximately 8:44 p.m., plaintiff made a call from HCJ to an unknown individual. [Dkt. No. 30-2] at 2, ¶ 9; [Dkt. No. 30-2] at 153. During the phone call, plaintiff discussed the events of August 26 and Deputy Amoah. He stated that, after Deputy Amoah pushed him, plaintiff "stood there and laughed at him, and said, I got your ass now." [Dkt. No. 30-2] at 153 ("Sept. 6 Call I") at 1:28-1:42. He later stated that he "smiled" and "laughed" at defendant and said, "You just fucked up, buddy." Id. at 2:10-2:18. Finally, he stated that he has had nightmares since the incident but then laughed while discussing visiting mental health officials and insisted to the call recipient that "they" could not prove that he was not having nightmares. Id. at 3:30-4:04; 5:12-5:44.

On the same night, plaintiff placed a second call at approximately 9:07 p.m. [Dkt. No. 30-2] at 2, ¶ 10. During that call, plaintiff described the August 26 incident and stated, "I finally landed one here." [Dkt. No. 30-2] at 154 ("Sept. 6 Call II") at 6:15-6:21. He then said, "And the man called me a faggot. Guess what. I'm a stone-cold homosexual." Id. at 6:30-6:37. Plaintiff then almost immediately began to laugh and stated, "WHAT? I'm going all the way. Fuck it." Id. at 6:39-6:44.

Plaintiff placed another call the following day, on September 7, 2022, at approximately 8:36 p.m. [Dkt. No. 30-2] at 2, ¶ 11. During that call, plaintiff indicated that he was "going to play the card the whole way, too." [Dkt. No. 30-2] at 155 ("Sept. 7 Call") at 1:37-2:01.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the

4

governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

In his Motion for Summary Judgment, Deputy Amoah argues that judgment should be entered in his favor because he did not violate plaintiff's rights; plaintiff failed to exhaust required administrative remedies with respect to his claims; and he is entitled to qualified immunity. [Dkt. No. 30] at 9-17. For the reasons explained below, the Court finds that Amoah did not violate plaintiff's rights and that Amoah is protected by qualified immunity. The Court need not address the exhaustion defense.

**A.    Merits of Plaintiff's Claims**

The Complaint alleges that Deputy Amoah used force against plaintiff and uttered a slur with respect to plaintiff's sexuality. See [Dkt. No. 1] at 4. It also claims, in passing, that plaintiff has "been trying to file charges [against Deputy Amoah]" but has not yet been able to speak to a magistrate to do so. Id. These claims are meritless.

To succeed on an excessive force claim, a pretrial detainee "must show only that the force purposely or knowingly used against him [by a jail official] was objectively unreasonable." Coney v. Davis, 809 F. App'x 158, 159 (4th Cir. June 16, 2020) (quoting Kingsley v.

5

Hendrickson, 576 U.S. 389, 396-97 (2015)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 576 U.S. at 397. In making its determination, a district court must consider factors such as "the relationship between the need for the use of force and the amount of force used," "the extent of the plaintiff's injury[,]" and "any effort made by the officer to temper or to limit the amount of force." Id. A reviewing court should also consider "the severity of the security problem at issue," "the threat reasonably perceived by the officer[,] and whether the plaintiff was actively resisting." Id. A plaintiff must "demonstrate that the officer used a 'nontrivial' amount of force ... [but a] violation can occur even if that force did not cause serious injury." Fletcher v. Dykes, No. TDC-17-0914, 2018 WL 3785143, at *5 (D. Md. Aug. 9, 2018) (quoting Wilkins v. Gaddy, 559 U.S. 34, 39 (2010)).

Having applied the factors discussed above to the factual record, there are no material facts in dispute as to the excessive force claim, and Deputy Amoah is entitled to judgment in his favor. First, plaintiff's obstructive behavior fully justified defendant using some degree of force. Plaintiff was clearly disregarding a lawful order to wait before entering the sallyport, raised his fists at the defendant, and physically resisted Deputy Amoah's directions while in the sallyport. See Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996) (finding guards' decision to use force justified in the face of inmates' refusal to cease unruly and disruptive behavior); Morris v. Baltimore Cnty. Det. Ctr., No. SAG-20-256, 2020 WL 7139034, at *4 (D. Md. Dec. 7, 2020) (citing plaintiff's raising of his right arm as justification for defendant's decision to "[hold] Plaintiff down on the floor until two other responding officers handcuffed him"). Moreover, it is undisputed that Deputy Amoah used only a limited amount of force which consisted of pushing plaintiff backward and later restraining him in the sallyport. Each use of force was brief and

ended when plaintiff no longer resisted or presented a threat to defendant or other staff members and inmates.

Moreover, the record does not contain any evidence showing that plaintiff suffered any physical injury from Deputy Amoah's actions. In fact, the Complaint does not allege that plaintiff suffered a physical injury. Although plaintiff claimed in recorded phone calls to have suffered nightmares after Deputy Amoah's use of force, he immediately undercut his own statements by stating that defendant could not disprove plaintiff's claim that he was having nightmares and by stating that he was going to "play the card the whole way." [4] Consequently, the Court concludes that this factor also favors defendant.

Finally, the evidence before the Court supports Deputy Amoah's view of plaintiff as posing a legitimate and serious threat to institutional security. Indeed, on August 26, 2022, plaintiff ignored defendant's verbal orders to step away from the sallyport, made threatening gestures and statements to defendant, and actively resisted defendant's efforts to restrain him in the sallyport at a time when the defendant was the only official blocking plaintiff from accessing interior areas of the jail and coming into contact with other deputy sheriffs and the nurse conducting pill call. These facts support entry of judgment in Deputy Amoah's favor. Cf. Haizlip v. Alston, No. 1:14cv770, 2016 WL 4184426, at *18 (M.D.N.C. Aug. 5, 2016) (finding defendants reasonably perceived a threat from plaintiff who "had just attempted to engage Defendant Alston in a physical altercation and then resisted Defendant Alston's efforts to put

---

[4] Although the Court may not determine credibility at the summary judgment stage, many of the statements plaintiff made in his outgoing phone calls support the conclusion that he had been looking for an excuse to file a lawsuit against jail officials and that his claims are overblown. For instance, plaintiff's claim that he is a "stone-cold homosexual" was made while laughing and is called into question by the fact that, in a later phone call, plaintiff claimed that he would play this "card" in his lawsuit.

7

him in the holding cell," concluding that "[p]laintiff's resistance presented an objectively serious threat of escape and/or harm to Defendant Alston, Defendant Moore, and any others in the jail").

Defendant is also entitled to judgment with respect to plaintiff's allegation that defendant called plaintiff a "faggot." Deputy Amoah denies ever calling plaintiff this word, and there is no admissible evidence in the record to create a dispute of fact as to this issue.[5] Even if a dispute of fact existed, judgment for defendant would be warranted because "verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (citations omitted). See also Goodwin v. Vanburn, No. 7:22-cv-164, 2022 WL 1240434, at *3 (W.D. Va. Apr. 27, 2022) (finding that "verbal harassment, even harassment that is sexual in nature," does not violate the Fourteenth Amendment).

Finally, to the extent plaintiff seeks relief based on his allegation that he has been unable to speak to a magistrate about filing criminal charges against Deputy Amoah, Amoah is entitled to judgment as to this claim because plaintiff, as a private citizen, has "no judicially cognizable interest in the prosecution or nonprosecution" of another person. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). Rather, the decision to file criminal charges against someone rests with prosecutors. See Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978) ("In our system, ... the decision whether or not to prosecute, and what charge to file ..., rests entirely in [the prosecutor's] discretion.").

---

[5] Plaintiff's Complaint is unsworn and thus does not constitute admissible evidence. See, e.g., Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").

8

B. **Qualified Immunity**

Finally, the Court concludes that Deputy Amoah is entitled to qualified immunity with respect to plaintiff's claims against him, as the record does not support the existence of any constitutional violation. See Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (observing that an officer is entitled to qualified immunity if the facts do not support the existence of any constitutional violation or the right allegedly violated was not clearly established such that it would have been "clear to a reasonable officer that his conduct was unlawful in the situation confronted").[6]

### IV. Conclusion

For the reasons stated above, Deputy Amoah's Motion for Summary Judgment will be granted by an Order that will accompany this Memorandum Opinion.

Entered this 23rd day of January 2024.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[6] The Court observes that, "[o]nce [a] defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred." Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993) (internal citation omitted). By failing to oppose defendant's Motion for Summary Judgment, plaintiff has failed to satisfy his burden in opposing defendant's qualified immunity defense.

9